NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWARD JOHNSON INTERNATIONAL, INC., a Delaware Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>VRAJ BRIG, LLC, a New Jersey Limited Liability Company, Pankaj Sheth, and Peter A. Tucci, Sr.<br><br>        Defendants. | Civ. No. 08-1466<br><br>OPINION & ORDER |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon Plaintiff's Motion for Summary Judgment [39] and Defendant Peter A. Tucci's Motion for Summary Judgment [40]. The Court has decided these motions upon consideration of the parties' written submissions. Defendants Vraj Brig, LLC and Pankaj Sheth have not filed oppositions. For the reasons stated below, Plaintiff's motion is GRANTED IN PART and DENIED IN PART. Defendant Tucci's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff, Howard Johnson International, Inc. ("HJI"), is a corporation whose principal business is the operation of a guest lodging facility franchise system. HJI does not own or operate any hotels itself. Rather, it licenses individual franchisees to use Howard Johnson marks (i.e., trademarks, service marks, logos, etc), and it provides certain services to those licensees,

1

including a centralized reservation system. Defendant Vraj Brig, LLC ("Vraj Brig") was one such licensee who operated a Howard Johnson lodging facility in Mount Holly, New Jersey. However, Vraj Brig did not own the guest lodging facility. Instead, Northeast Hospitality Services, LLC ("Northeast")—a nonparty to this action—leased the facility from Defendant Peter Tucci and contracted with Vraj Brig to manage the hotel. HJI and Vraj Brig signed their license agreement ("License Agreement" or "LA")[1]—which had a term of fifteen years—on August 15, 2001. (LA preamble, § 5.)

The license agreement between HJI and Vraj Brig had several features relevant to this litigation. As part of the contract, Vraj Brig owed HJI certain recurring fees for royalties, marketing, and room sales. (*See* LA § 7.) Under section 11.2, HJI was permitted to terminate the License Agreement if Vraj Brig either discontinued operating the hotel as a Howard Johnson guest lodging establishment or lost possession of the facility. If HJI terminated the license agreement under section 11.2 before the last two license years, the License Agreement obligated Vraj Brig to pay HJI $75,000 in liquidated damages as well as all costs, expenses, and attorneys' fees incurred in enforcing the License Agreement. (*See* LA §§ 12.1, 18.7.) In addition to the License Agreement, HJI and Vraj Brig entered into an Addendum to the License Agreement for Satellite Connectivity Services ("Addendum").[2] The Addendum also contained a liquidated damages clause, in the amount of $1,000. The License Agreement also required that, in the event of termination, Vraj Brig cease using all Howard Johnson marks. (LA § 13.1.) Finally, it is important to note that Defendant Pankaj Sheth—the only constituent member of Vraj Brig—provided HJI with a guarantee of Vraj Brig's obligations under the License Agreement. Sheth

---

[1] The License Agreement is attached as "Exhibit A" to the Affidavit of Valerie Capers Workman, appended to Plaintiff's Motion for Summary Judgment.
[2] The Addendum is attached as "Exhibit C" to the Workman Affidavit.

2

agreed that upon a default under the License Agreement, he would himself make each payment and perform each obligation due uner the License Agreement.  (*See* Guarantee.)[3]

In August 2006, Tucci commenced a summary dispossess action against Northeast, and on September 1, he took physical possession of the hotel.  (Cert. of Carlo Scaramella, Ex. D.)  At the time Tucci took possession, the property was decommissioned and non-functioning with extensive vandalism, theft, and destruction evident.  (Decl. of Peter Tucci ¶¶ 3-4.)  Thereafter, Vraj Brig ceased operating the property.  (Decl. of Erika Duelks, Ex. C., Response # 14.)  In October, when HJI learned that Vraj Brig had ceased operating the facility, it terminated the License Agreement pursuant to section 11.2.  (Workman Aff. ¶¶ 38-40.)  At the time HJI terminated the agreement, Vraj Brig owed recurring fees in the amount of $66,214.70, which have not been paid.  (Workman Aff. ¶ 53 & Ex. H.)  Sometime beginning in either December 2006 or early 2007, HJI and Tucci began negotiations for a new license agreement for the hotel.  (Tucci Decl. ¶ 7; Workman Aff. ¶¶ 42.)  It is unclear precisely how long negotiations lasted, though it appears they continued at least through June, 2007.  (*See* Workman Aff. ¶ 47.)

A central point of contention in this case concerns a billboard at the facility bearing the name "Howard Johnson," which was visible from a nearby highway.  As stated above, one of the provisions of the License Agreement required Vraj Brig to cease using all Howard Johnson marks in the event of termination.  However, the Howard Johnson sign was never taken down from the billboard at the facility.  HJI alleges that Vraj Brig sought to remove the sign on or about September 9, 2006 and that a representative of HJI later sought to remove the sign in June 2007, but that Defendant Tucci refused to allow removal on both occasions.  Defendant Tucci denies both these allegations, claiming that it never prevented either Vraj Brig or HJI from removing the sign.  The parties also disagree as to when HJI first asserted to Tucci that the

---

[3] The Guarantee is attached as "Exhibit B" to the Workman Affidavit.

continued presence of the billboard displaying the Howard Johnson name was improper. HJI alleges it first alerted Tucci by a letter dated December 13, 2006, while Tucci insists that HJI did not claim that the sign must be removed until June 26, 2007, though both parties agree that the subject of the sign came up in the negotiations for a new license agreement.

HJI eventually filed this lawsuit against Vraj Brig, Sheth, and Tucci on March 24, 2008.[4] HJI's claims against Vraj Brig include breach of contract, violations of the Lanham Act, unfair competition, and unjust enrichment. HJI claims that Sheth is liable for any amounts owed by Vraj Brig. HJI's claims against Tucci include violations of the Lanham Act, unfair competition, and unjust enrichment. Tucci filed a counterclaim against HJI for trespass, conversion, unjust enrichment, unfair competition, false advertising, breach of contract as a third party beneficiary to the License Agreement, implied license, and breach of the duty of good faith and fair dealing. Both HJI and Tucci have now filed motions for summary judgment. HJI seeks entry of judgment on its breach of contract claims against Vraj Brig and Sheth, entry of judgment on its Lanham Act claim against Tucci, and dismissal of Tucci's counterclaim in its entirety. Tucci seeks dismissal of HJI's Lanham Act claim and further argues that once this claim is dismissed, HJI's remaining claims should be dismissed for lack of subject matter jurisdiction.

Vraj Brig and Sheth have not opposed HJI's motion for summary judgment against them.

## ANALYSIS

I.      Standard of Review

Summary Judgment is proper when "the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In resolving a

---

[4] An Amended Complaint was filed on April 17, 2008, and a Second Amended Complaint was filed on December 16, 2008.

4

motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More specifically, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. Accordingly, if the movant's motion is supported by facts, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

While a party moving for summary judgment must, of course, produce evidence supporting those elements essential to its case, it is not obliged to produce evidence specifically disproving those elements essential to its adversary's case. The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323-24.

    II.    <u>HJI's Breach of Contract Claims Against Vraj Brig and Sheth</u>

        A.  <u>Vraj Brig is liable for breach of contract</u>

The relevant terms of the License Agreement are unambiguous, so their application is a matter of law reserved for the Court. *See Ram Const. Co., Inc. v. American States Ins. Co.*, 749 F.2d 1049, 1053 (3d Cir. 1984). As stated above, HJI lawfully terminated its License Agreement with Vraj Brig when Vraj Brig ceased operating the facility as a Howard Johnson facility. As a result of HJI's termination of the License Agreement, Vraj Brig was required to pay HJI

liquidated damages of $75,000.  An additional $1,000 was due under the Addendum.  Furthermore, at the time of termination, Vraj Brig owed $66,214.70 in unpaid recurring fees.  Neither the liquidated damages nor the unpaid fees have been paid.  Therefore, Vraj Brig is in breach of contract.

> B.  <u>Plaintiff has not produced evidence showing Sheth is liable under the guarantee</u>

Like the License Agreement, the Guarantee is unambiguous, so its application to the facts of the case is a matter of law.  In the Guarantee, Defendant Sheth promised to "make each payment and perform . . . each unpaid or unperformed obligation of Licensee under the [License] Agreement."  (Guarantee.)  However, the guarantee is structured so that it only takes effect in certain circumstances.  First, HJI is required to give notice to Sheth in the event of Vraj Brig's default under the License Agreement.  (*Id.*)  Furthermore, the Guarantee specifies that Sheth is only liable if the tangible net worth of Vraj Brig is less than $1,000,000 at the time he receives the notice.  (*Id.*)  However, the Guarantee also states that HJI is entitled to presume that Vraj Brig is worth less than $1,000,000 if Sheth does not furnish HJI with Vraj Brig's balance sheet within 10 days of receiving the notice of default.  (*Id.*)

On a motion for summary judgment, it is Plaintiff HJI's burden to show that Sheth is liable under the guarantee.  It appears that Plaintiff did give notice to Sheth as required by the Guarantee.  (*See* Workman Aff., Ex. E.)  However, there is no evidence indicating Vraj Brig's net worth on or about December 13, 2006—the date when HJI sent the notice to Sheth.  Nor is there any evidence as to whether or not Sheth sent a balance sheet to HJI.  In the absence of any evidence that would support a finding that Sheth is liable under the conditions specified in the

guarantee, summary judgment against Sheth is not warranted. Therefore, the Court must deny Plaintiff's motion for summary judgment as against Defendant Sheth.

### C. Attorneys' Fees

Under section 17.4 of the License Agreement, the prevailing party in an action to enforce the agreement is entitled to recover "all costs and expenses, including reasonable attorneys' fees" from the non-prevailing party. Attorneys' fees clauses are enforceable in New Jersey. *See, e.g., Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll*, 44 N.J. 442, 448 (1965). Therefore, HJI's motion for attorneys' fees will be granted. Supporting documentation must be submitted to the Court in accordance with the local rules within 30 days of the entry of this order in accordance with L. Civ. R. 54.2.

### D. Pre-judgment interest

Under New Jersey law, the award of prejudgment interest in contract cases is governed by equitable principles rather than court rules, and its allowance is a matter of discretion for the trial court. *County of Essex v. First Union Nat'l Bank*, 186 N.J. 46, 61 (2006). Plaintiff argues that pre-judgment interest on all its claims should be calculated at the rate of 1.5% per month (18% per annum), the interest rate specified for late payments under the License Agreement. (LA § 7.3.) However, this Court is guided by the principle that

> in awarding prejudgment interest "[t]he basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the prejudgment period during which the defendant had the benefit of monies to which the plaintiff is found to have been earlier entitled."

*County of Essex*, 186 N.J. at 61 (quoting *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 N.J. 474, 506 (1974)). In other words, the Court should calculate prejudgment interest based on what the Plaintiff could have reasonably been expected to accomplish with the damages awarded. To

7

fully compensate Plaintiff for all the money to which it was entitled under the contract, interest should run from the date of the breach of contract.

The Court finds that the rate of interest proposed by Plaintiff—18% per annum—is far in excess of the value of the damages to Plaintiff during the time between the breach of contract and the date of judgment. That rate is the rate of interest due on late payments under the contract; it does not represent the value of Plaintiff's damages in the marketplace.

The Court elects to award interest in a manner similar to what the federal courts use to calculate post-judgment interest under 28 U.S.C. § 1961, which calls for courts to set interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." Rather than simply settling for the rate that was in effect at the time the Contract was breached—October 12, 2006—this Court will take the average of the rate that was in effect on the date of breach as well as the rates in effect one and two years after the breach. Those three rates are 5.03%, 4.24%, and 1.25%, which average to 3.50%. *See* http://www.utd.uscourts.gov/documents/judgpage.html (collecting interest rates).

The Court notes that, unlike pre-judgment interest, post-judgment interest is specifically determined by court rule. See N.J. Ct. R. 4:42-11. Post-judgment interest on judgments entered in 2010 is, coincidentally, also set at 3.5%. *See* http://www.judiciary.state.nj.us/civil/PostPre-JudgmentRates.pdf.

III. HJI's Lanham Act Claims Against Tucci

Plaintiff brings claims under both § 32(1) and § 43(a) of the Lanham Act (codified at 15 U.S.C. §§ 1114(1) & 1125(a), respectively). The two sections are sometimes explicated as articulating different legal claims, but in a case such as this—where the claim is essentially that

8

the defendant's use of a protected mark is causing confusion as to the affiliation of goods or services—the elements for the two claims are the same.[5] *See, e.g., Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 469-70 (3d Cir. 2005) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 166 F.3d 197, 202 (3d Cir. 1999)). "To prove trademark infringement, a plaintiff must show that: (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994). There does not appear to be any dispute over the first two elements in this case; both Plaintiff and Tucci accept that HJI owns the various Howard Johnson marks and that those marks are legally protectable.

However, the parties do dispute whether or not Plaintiff has proven the third element of its Lanham Act claim. The focus of their argument is not over the "likely to create confusion" aspect of the third element, but rather other the more elementary question of whether or not Tucci made any "use of the mark to identify goods or services." By its wording, the Lanham Act only supports a claim against defendants who "use" a protected mark "in connection" with the offer or provision of "goods or services."[6] Tucci's argument proceeds as follows: Since he has

---

[5] If there were any doubt as to whether Plaintiff is bringing two distinct Lanham Act claims or one, this Court's decision to treat them together would be further bolstered by the facts that Plaintiff alleges violations of both sections in the same count of its Second Amended Complaint and argues both violations simultaneously in its brief in support of its Motion for Summary Judgment.

[6] Section 32 of the Lanham Act provides in part:

> (1) Any person who shall, without the consent of the registrant-
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark *in connection with the sale, offering for sale, distribution, or advertising of any goods or services* on or in connection with which such use is likely to cause confusion, . . .
> shall be liable in a civil action by the registrant for the remedies hereinafter provided. (emphasis added)

Section 43 of the Lanham Act provides in part:

not operated a lodging facility on the property in question since retaking possession from Northeast, he has not "used" the mark in the provision of any goods or services, and hence, his failure to remove the Howard Johnson sign is outside the scope of the Lanham Act.

Plaintiff responds to Tucci's argument by insisting that the Lanham Act is not limited to profit-seeking activity. *United We Stand America, Inc. v. United We Stand America New York*, 128 F.3d 86, 90-92 (2d Cir. 1997). In *United We Stand*, the Second Circuit held that the Act applies with equal force to nonprofit groups such as groups that perform political services such as raising money for candidates, engaging in public advocacy, and holding public meetings. *Id.* No other circuit has explicitly adopted the Second Circuit's position, but even if this Court were to incorporate the *United We Stand* opinion *in toto*, it would not control the case at bar. That case dealt with a situation where defendants were in the business of providing identifiable services, even if those services were provided without charge. As explained above, Defendant Tucci is not alleged to have provided any goods or services whatsoever at the facility where the Howard Johnson sign now stands.

This Court concludes that the Lanham Act should not be construed to apply to the situation where a defendant displays a protected mark but does not use the mark in the offer or provision of any goods or services. As will be explained, in such a situation, the defendant neither makes "use" of the mark, nor is there any "connection to goods or services," both of which are requirements for liability under the Lanham Act.

---

(a)(1) Any person who, *on or in connection with any goods or services*, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . .
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. (emphasis added)

Relatively few cases have analyzed the "use" requirement of the Lanham Act as that word pertains to a defendant's actions in connection with a protected mark. However, those cases that have addressed this question generally support Tucci's position. In *Holiday Inns, Inc. v. 800 Reservation, Inc.*, the Sixth Circuit held that Holiday Inns—which trademarked the phone number "1-800-HOLIDAY"—could not obtain an injunction against a different company's use of the number "1-800-H0LIDAY" (using a zero instead of the "O"). 86 F.3d 619 (6th Cir. 1996). The court noted that what the Lanham Act prohibits is the confusing "use" of a protected term but that "the defendants in this case never *used* Holiday Inns's trademark." *Id.* at 625 (emphasis in original). Rather, the defendant simply took advantage of pre-existing confusion between the two phone numbers without making any effort either to create the confusion or to further publicize it. Several years later, the Eighth Circuit reviewed *Holiday Inns* and several other vanity telephone number cases and concluded that "the mark holder is generally not entitled to relief unless the defendant advertises or otherwise promotes the alphanumeric translation of the phone number thereby causing the public to see the protected mark and associate the infringer's goods or services with those of the mark holder." *Daimler Chrysler AG v. Bloom*, 315 F.3d 932, 939 (8th Cir. 2003). These cases are best summarized as standing for the following proposition: The mere fact that confusion exists with respect to the affiliation between a protected mark and a defendant's goods or services is insufficient grounds to hold the defendant liable. Rather, the defendant must take some affirmative action to create or enhance the confusion in order to violate the Lanham Act.

Case law also supports the proposition that infringing use is only illegal if it is done in connection with the defendant's offer or provision of goods or services. In cases in multiple circuits, courts have held that individuals who use protected marks in the course of merely

11

criticizing the trademark holders' goods or services do not violate the Lanham Act.  *See Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 677-680 (9th Cir. 2005) (comparing and discussing cases). Courts have identified multiple reasons for holding that the Act does not apply in this situation, the most important of which for the case at bar is that such speech does not fall within the purview of the act because it bears no connection to the provision of goods or services.[7]  For example, in the *Bosley* case cited above, the Ninth Circuit held that a person who created a website, "www.BosleyMedical.com," and used the website to post criticism of the Bosley Medical Institute did not violate the Lanham Act.  *Id.* The appeals court reasoned that the Act did not apply to persons who use protected marks without any intent to compete with the mark's owner or free ride on the goodwill associated with the mark.  *Id.*  As the court explained, "[T]rademark infringement protects only against mistaken *purchasing decisions* and not against confusion generally." *Id*. at 677 (emphasis in original) (citing *Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 582-83 (2d Cir. 1991)).  The Second Circuit's holding in *United We Stand*, 128 F.3d 86, would modify this proposition slightly, extending the Lanham Act to cover not only *purchasing decisions* but also the *cost-free* consumption of goods and services.  However, the case would not change the underlying principle that the Lanham Act protects only against confusion with respect to a transaction and not against "confusion generally."

In sum, the Lanham Act only prohibits the affirmative use of a protected mark, and only when that use is in connection with the defendant's offer or provision of goods or services.

Applying these rules to the facts of this case, this Court finds that Plaintiff has not produced evidence sufficient to sustain a verdict in its favor on its Lanham Act claims against

---

[7] Other reasons not directly relevant to this case include First Amendment protection of critical speech (*see, e.g,. L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26 (1st Cir. 1987)) and the notion that criticism and parodies are very unlikely to create confusion in the minds of customers as to who is responsible for the critical comments (*see, e.g., Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 505 (2d Cir. 1996)).

Tucci. The parties have presented conflicting evidence on whether or not Tucci prevented Plaintiff and/or others from entering onto Tucci's property in order to remove the Howard Johnson sign above the lodging facility. For purposes of Tucci's motion for summary judgment, this evidence must be construed in HJI's favor, meaning that this Court will assume that Tucci did prevent the removal of the sign. However, Plaintiff has produced no evidence that Tucci ever did anything other than passively allow a preexisting billboard containing HJI's marks to remain standing on his property. Therefore, Tucci never "used" the protected marks within the meaning of that term as it appears in the Lanham Act. Furthermore, even if Tucci were held to have "used" HJI's marks, he never offered or provided any goods or services at the lodging facility in question. Therefore, his display of the marks does not satisfy the "in connection with goods or services" requirement either.

HJI raises as further evidence of a connection to goods or services the argument that any individual travelling down the highway who sees the Howard Johnson sign over the lodging facility, exits the freeway looking for a Howard Johnson hotel, and then fails to find such a hotel will experience feelings of frustration that will tarnish his or her impression of HJI, thereby hurting Plaintiff's future commercial prospects. (Pltf.'s Opp'n Br. 6-7.) However, the connection the Lanham Act speaks of must be to the *defendant's* offer of goods or services, not the plaintiff's offer goods or services. Otherwise, any speech critical of a business which uses the business's protected marks would qualify as trademark infringement, a position which numerous courts have rejected, as was noted above. Simply put, §§ 32(1) and 43(a) do not prohibit unauthorized use of a protected mark when the user is not trying to gain any advantage through confusion in offering its own goods or services.

As it would be Plaintiff's burden at trial to persuade the trier of fact both that Tucci "used" the protected mark and that such use was made in connection with goods or services, it is Plaintiff's burden now to come forward with sufficient evidence to support a finding in its favor on those issues. It has not done so. Therefore, the Court will grant summary judgment against Plaintiff on its claims under 15 U.S.C. §§ 1114(1) and 1125(a).

The parties do not give any attention as to whether or not the same issues are relevant to Plaintiff's claims under § 43(c) of the Lanham Act (codified at 15 U.S.C. § 1125(c)). However, this Court has little trouble concluding that this claim must be dismissed as well and for the very same reasons. Section 43(c) of the Lanham Act deals with trademark "dilution," a separate claim from trademark "infringement." However, trademark dilution also requires a plaintiff to prove "use" and that the use be "in commerce"—words whose meaning has been explicated in the very same way that the "connection to goods or services" language has. *See Bosley*, 403 F.3d at 676-80. Like infringement claims, dilution claims require a showing that the defendant used the protected mark in offering or providing its own goods or services. *E.g., Tiffany (NJ) v. eBay, Inc.*, 576 F. Supp. 2d 463, 524-25 (S.D.N.Y. 2008). As explained above, Plaintiff has offered no evidence that would support a finding that Tucci ever used the Howard Johnson marks in the offer or sale of his own goods or services. Therefore, Plaintiff's dilution claim will also be dismissed.

    IV.    <u>Plaintiff's Remaining Claims</u>

Tucci moves for summary judgment on Counts Two and Three of the Second Amended Complaint as well, but the Court does not read those Counts as necessarily raising Lanham Act claims. As those counts mention no statutes, the Court assumes they are state common law

claims. Tucci has not made any argument with regards to state law, so his motion to have these counts dismissed must be denied.

Tucci has also moved to have the entire matter dismissed for lack of jurisdiction, arguing that—in the absence of a valid Lanham Act claim—there is no remaining subject matter in this case over which the Court has jurisdiction. However, Plaintiff's Lanham Act claims against Vraj Brig have not been dismissed. Therefore, the Court still has federal question jurisdiction over Plaintiff's remaining Lanham Act claims and supplemental jurisdiction over the remaining state law claims.

V. Tucci's Counterclaim Against HJI

Tucci's counterclaim against HJI asserts eight different claims, and HJI has moved for summary judgment against all of them. The Court will analyze them one at a time.

A. Trespass

HJI argues that it cannot have committed a trespass because it had permission to install the Howard Johnson sign under the terms of the License Agreement. However, a trespass can generally be committed "by the continued presence on the land of a structure, chattel, or other thing" when the party who placed it there loses its license. *See Restatement (2d) of Torts* § 160. Plaintiff has cited no authority to the contrary of this general rule, and it has made no argument as to whether the rule is applicable on this case's facts. Furthermore, there is genuine dispute as to whether Tucci prevented HJI or Vraj Brig from removing the sign. Therefore, there is genuine dispute as to whether or not Tucci will succeed on his claim for trespass.

B. Conversion

To make out a claim for conversion, a claimant must show "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to

15

the alteration of their condition or the exclusion of an owner's rights." *Barco Auto Leasing Corp. v. Holt*, 228 N.J. Super. 77, 83 (App. Div. 1988) (citing *McGlynn v. Schultz*, 90 N.J. Super. 505, 526 (Ch. Div. 1966)). Plaintiff argues that Tucci's claim for conversion must be dismissed because the Howard Johnson sign had been erected properly, and there is no evidence that HJI had the intent necessary to support a conversion claim.

However, this Court finds that the conversion claim must be dismissed for a much simpler reason. Specifically, Tucci has produced no evidence that would support a finding that Plaintiff has ever interfered with any of Tucci's personal chattels. Defendant Tucci testified—by affidavit—that he "never prevented Howard Johnson, Northeast Hospitality Properties LLC, or any of their agents or managers from entering the Facility for the purposes of removing or covering *its sign and billboard*." (Tucci Decl. ¶ 12 (emphasis added).) If the billboard did not belong to Tucci, then he cannot maintain a claim for its conversion. The claim for conversion is further undermined by the fact that Tucci has testified that Plaintiff has never come on to the property to do anything with the sign since Tucci took possession of the facility. This shows that Plaintiff did not exercise the kind of interference and control that would constitute conversion. To the extent that the billboard remained unlawfully on Tucci's real property, his claim is for trespass, not conversion. Therefore, the conversion claim must be dismissed.

    C. <u>Unjust Enrichment</u>

A claim for unjust enrichment requires the claimant to show that he provided services to another person and that it would be reasonable for him to expect compensation from the person who received the services, or else that person would be unjustly enriched. *See, e.g., Kopin v. Orange Prods., Inc.*, 279 N.J. Super. 353, 366-68 (App. Div. 1997). Tucci seeks compensation for allowing Plaintiff to maintain the Howard Johnson sign on Tucci's property after Tucci

retook possession of the property. Plaintiff seeks to dismiss this claim, arguing that its repeated requests that Tucci take down the sign mean that Tucci could not have had a reasonable expectation of remuneration. However, as noted above, there is a material dispute over whether and to what extent Plaintiff demanded Tucci remove the signs, and whether or not Tucci prevented Plaintiff from removing the signs. Therefore, summary judgment is not warranted on this claim.

        D. Unfair Competition

Count four of the Counterclaim raises three related unfair competition claims: Section 43(a) of the Lanham Act, N.J.S.A. § 56:4-1, and common law unfair competition. As was explained above with regard to Plaintiff's Lanham Act claims, no goods or services have been provided in connection with the Howard Johnson sign, so the claim fails as a matter of law. With regard to N.J.S.A. § 56:4-1, that statute prohibits a merchant, firm, or corporation from appropriating another merchant, firm or corporation's "name, brand, trade-mark, reputation or goodwill." Tucci has provided no evidence or explanation as to how HJI is trading on his name, reputation, or goodwill. Therefore, this claim fails as a matter of law as well. Finally, a common law claim of unfair competition requires the claimant to prove that one party is trying to pass off its goods or services as the goods or services of another. *See, e.g., Fotomat Corp. v. Photo Drive-Thru, Inc.*, 425 F.Supp 693, 708-09 (D.N.J. 1977) (citing cases). As just mentioned, there is no evidence on the record that would support a finding that HJI is trying to pass off its goods or services as Tucci's. Therefore, that claim fails as well. Since all three unfair competition claims fail, Count IV of the Counterclaim must be dismissed.

        E. False Advertising

Tucci's claim for false advertising is based on Section 43(a)(1)(B) of the Lanham Act, which prohibits false or misleading representations which "misrepresent[] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." As has been stated several times, there have been no services offered at the lodging facility during all times relevant to the allegations in this lawsuit. Therefore, one of the basic elements of a Lanham Act claim is missing, and the claim must be dismissed.

### F. Third Party Beneficiary

Whether or not a person can enforce a contract as a third party beneficiary turns on whether the contracting parties intended the third party to benefit or whether the benefit was an unintended incident of agreement. *Broadway Maintenance Corp. v. Rutgers, State University*, 90 N.J. 253 (1982). In this case, the License Agreement specifically disclaimed the creation of third party enforcement rights. (LA § 17.5.) Tucci has presented no evidence that would credibly undermine this provision of the contract, and his conclusory assertions to the contrary find no basis in the record. Since Tucci has failed to create a genuine dispute of fact on this point, Count VI of the Counterclaim will be dismissed.

### G. Implied License

Implied licenses are terminable at will. *Coach House Restaurant, Inc. v. Coach & Six Restaurant, Inc.*, 934 F.2d 1551, 1563 (11th Cir. 1991). Therefore, whatever implied license Tucci might have held was terminated as soon as negotiations between HJI and Tucci broke down, which would have been no later than early 2008. While the existence of an implied license prior to that time might have been relevant as a defense to Plaintiff's Lanham Act claim for damages, that claim has already been dismissed. For these reasons, Count VII of the Counterclaim will be dismissed.

### H. Breach of the Duty of Good Faith and Fair Dealing

Tucci's last Count is for breach of the duty of good faith and fair dealing. Such a duty is implied under every contract. *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). However, Tucci and Plaintiff were never parties to a contract. While Tucci's Counterclaim asserts that this duty exists in negotiations as well as contracts, Tucci has not provided any legal authority to support this proposition. The obligation of good faith will sometimes supply the necessary consideration for an otherwise unenforceable agreement, but Tucci has not introduced any evidence that he and Plaintiff ever reached an agreement. Therefore, the claim must be dismissed.

### CONCLUSION

For the foregoing reasons, it is ORDERED, this 14th day of January, 2010, that:

1. Plaintiff's Motion for Summary Judgment [39] is GRANTED IN PART; and

2. Plaintiff HJI recover from Defendant Vraj Brig the amount of $142,214.70, with prejudgment interest at the rate of 3.50%, accruing as of October 12, 2006 and compounded annually, and postjudgment interest at the rate of 3.5%; and

3. Plaintiff's motion for attorneys' fees is GRANTED; and

4. Plaintiff submit affidavits and documentation in support of its application for attorneys fees within 30 days of entry of this order in accordance with L. Civ. R. 54.2; and

5. As additional claims remain unresolved in this case, this order shall not be considered an entry of final judgment (*see* Fed. R. Civ. P. 54(b)); and

6. Counts II, IV, V, VI, VII and VIII of Defendant Tucci's Counterclaim against Plaintiff are DISMISSED with prejudice; and

7. Plaintiff's other requests for relief are DENIED; and

8. Defendant Tucci's Motion for Summary Judgment [40] is GRANTED IN PART; and

9. Count I of the Second Amended Complaint is DISMISSED with prejudice as against Defendant Tucci; and

10. Defendant Tucci's other requests for relief are DENIED.

*/s/  Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.